USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 5/8/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
4 PILLAR DYNASTY LLC, and REFLEX
PERFORMANCE RESOURCES, INC.,

                                   Plaintiffs,

        -against-

SAUCONY, INC.,

                                   Defendant.
-----------------------------------------------------------------X

1:16-cv-2824-GHW

MEMORANDUM OPINION
AND ORDER

GREGORY H. WOODS, United States District Judge:

      In this suit, Plaintiffs 4 Pillar Dynasty LLC and Reflex Performance Resources, Inc. allege that Defendant Saucony, Inc. has infringed its trademark for the word "Velocity" for use on clothes and performance wear. Not so fast, says Saucony, which seeks a declaration of non-infringement and asserts counterclaims alleging that it was first out of the blocks as the senior user of the "Velocity" mark, making Plaintiffs the infringers. Saucony has moved for summary judgment for dismissal of the complaint and on its counterclaims. Because a triable issue of fact exists at least with respect to the threshold question of which party is the senior user of the mark at issue, Saucony's motion for summary judgment is DENIED.

**I.    BACKGROUND**[1]

      Plaintiff 4 Pillar Dynasty LLC ("4 Pillar") holds a federal trademark registration for the word "Velocity" for use on clothes and performance gear. Pls.'/Countercl. Defs.' Local Rule 56.1 Counterstatement (ECF No. 65) ("Pls.' 56.1") ¶ 42;[2] Decl. of Edward F. Maluf in Supp. of Mot. for Summ. J. (ECF No. 58) ("Maluf Decl."), Ex. R (certificate of registration). 4 Pillar filed an

---

[1] Unless otherwise noted, the following facts are not disputed for purposes of this motion, or are taken in the light most favorable to Plaintiffs. See *Mitchell v. City of New York*, 841 F.3d 72, 75 (2d Cir. 2016) (at summary judgment, a court "views the evidentiary record in the light most favorable to . . . the non-moving party").

[2] The Court cites Plaintiffs' Local Rule 56.1 Counterstatement for all factual statements, whether made by Plaintiffs or Defendant.

application to register the "VELOCITY" mark (the "Mark") with the United States Patent and Trademark Office (the "PTO") on March 12, 2012. Pls.' 56.1 ¶ 30. 4 Pillar filed pursuant to Section 1(b) of the Lanham Act, which permits the filing of a registration application on the basis of a "bona fide intention to use" a trademark in commerce rather than on the basis of the applicant's prior use of the trademark. Pls.' 56.1 ¶ 31; 15 U.S.C. § 1051(b). On December 3, 2013, 4 Pillar updated its application and requested registration of the Mark by filing with the PTO a Trademark/Service Mark Statement of Use. Pls.' 56.1 ¶ 39. The Statement of Use included the following "allegation of use," made under penalty of perjury:

> The mark is in use in commerce on or in connection with all of the goods/services, or to indicate membership in the collective organization listed in the application or Notice of Allowance or as subsequently modified for this specific class.
>
> The mark was first used by the applicant, or the applicant's related company, licensee, or predecessor in interest at least as early as 01/13/2010, and first used in commerce at least as early as 01/13/2010, and is now in use in such commerce.

Maluf Decl., Ex. Q; Pls.' 56.1 ¶ 40. The PTO granted 4 Pillar's application to register the Mark on March 11, 2014. Pls.' 56.1 ¶ 42. The registration certificate contains a "first use" date of "1-13-2010" and an "in commerce" date of "1-13-2010." Maluf Decl., Ex. R.

Both 4 Pillar and Plaintiff Reflex Performance Resources, Inc. ("Reflex") are owned by Behrooz, Leon, and Faramarz Hedvat. Decl. of Behrooz Hedvat in Opp'n to Mot. for Summ. J. (ECF No. 64) ("Hedvat Decl.") ¶¶ 3,7 & Exs. A & B. It is undisputed that the Hedvats have manufactured and/or sold apparel through several different companies and under several different brand names for the past twenty-five years. Pls.' 56.1 ¶ 10. Currently, Reflex licenses the Mark from 4 Pillar and sells products bearing the Mark to retail stores and on the internet. Pls.' 56.1 ¶¶ 44-48; Hedvat Decl. ¶ 4. The date on which Plaintiffs—or the Hedvats, through a related or predecessor company—began using the Mark lies at the heart of this dispute and will be discussed further in Section 3, *infra*.

2

Defendant Saucony, Inc. ("Saucony") also manufactures and sells apparel, specifically, "[t]echnical performance wear and lifestyle" apparel. Dep. of Todd P. Dalhausser ("Dalhausser Dep.") 26:10-23 (Dec. 5, 2016), annexed to Maluf Decl as Ex. B. Like Plaintiffs, Saucony sells its "Velocity"-branded products both in brick-and-mortar retail stores and online. Pls.'s 56.1 ¶¶ 13-14; Dalhausser Dep. 28:5-30:2.[3] As with Plaintiffs, the date on which Saucony began using the word "Velocity" in connection with its products lies at the center of the dispute and will be discussed further in Section 3, *infra*.

Plaintiffs initiated this lawsuit on April 15, 2016. ECF No. 1. In their complaint, Plaintiffs bring claims for federal trademark infringement and common law trademark infringement, as well as state-law claims for unlawful and deceptive acts and practices pursuant to N.Y. Gen. Bus. Law §§ 133 and 349. Compl. at pp. 5-10. Each of Plaintiffs' claims is premised on Saucony "offering for sale a line of clothing and performance wear . . . under the brand name 'Velocity,'" including "performance wear, namely shirts, t-shirts and shorts." Compl. ¶¶ 9-10. Plaintiffs alleged that Saucony is using the Mark "in the exact same category and style of goods as Plaintiffs' [p]roducts" and that Saucony's use has caused and is "likely to continue to cause confusion as to the source, sponsorship and/or affiliation of the [i]nfringing [p]roducts." Compl. ¶¶ 11-12. Although Plaintiffs specifically alleged that 4 Pillar became the owner of the registered Mark effective March 12, 2012, Compl. ¶ 5, the complaint contains no allegations concerning use of the Mark prior to that date.

---

[3] In its Local Rule 56.1 statement, Saucony asserts that it "sells its products through the Internet, including amazon.com and jackrabbit.com, its own stores and website, as well as brick-and-mortar sporting goods and other retailers located throughout the United States, including, but not limited to, Dick's Sporting Goods." Pls.' 56.1 ¶ 13. Plaintiffs purport to contest that factual assertion and the evidence cited by Saucony to support it by asserting in their counterstatement that "[t]he statement is vague as to which products Saucony is referring to and when. Specifically, Saucony fails to offer any testimony as to where, if at all, the highly-specialized metal-spiked racing shoe named, at least at first, 'Velocity Spike Distance'[ ] upon which Saucony grounds its 'prior use defense' was ever sold." *Id.* Plaintiffs' counterstatement takes issue with the level of granularity of Saucony's factual statement—or, put another way, with what Saucony did *not* say— but the Court does not read Plaintiffs to contest the truth of the general statement that Saucony *did* make or of the testimony that Mr. Dalhausser gave as Saucony's 30(b)(6) deponent. And in any event, Plaintiffs do not cite any evidence to refute the evidence provided by Saucony on this point. The Court therefore deems this fact admitted for purposes of this motion.

Saucony filed an answer with counterclaims on July 8, 2016.  ECF No. 20 ("Countercls."). In its counterclaims, Saucony alleged that, while "4 Pillar only filed an Intent-to-Use application for the 'VELOCITY' mark in 2012," Saucony has been continuously using "its 'VELOCITY' mark . . . throughout the United States since no later than 2008," giving Saucony "superior rights" in the Mark.  Countercls. ¶ 1.  As a result, Saucony asserts counterclaims for trademark infringement and unfair competition under federal and state law and also seeks (i) "a judicial declaration that Saucony's use of the "VELOCITY" mark in connection with athletic shoes and apparel does not constitute trademark infringement, unfair competition, false designation of origin, dilution or unlawful and deceptive acts and practices under federal and state law" and (ii) cancellation of 4 Pillar's federal registration of the Mark.  Countercls. ¶ 1 & pp. 14-18.

After Plaintiffs failed to timely respond to Saucony's counterclaims, the Clerk of Court issued a certificate of default, ECF No. 26, and the Court issued an order to show cause why a default judgment should not be entered against Plaintiffs (in their capacity as counterclaim defendants).  ECF No. 27.  After a hearing on September 19, 2016, the Court issued an order setting aside Plaintiffs' entry of default.  ECF No. 37.  After a number of limited-scope extensions, discovery closed on December 5, 2016.  *See* ECF No. 51.

Saucony filed its motion for summary judgment on January 27, 2017.  ECF Nos. 56-62. Plaintiffs filed an opposition on February 24, 2017.  ECF Nos. 63-67.  Saucony filed a reply in support of its motion on March 10, 2017.  ECF Nos. 71-72.

## II.   LEGAL STANDARD

Defendants are entitled to summary judgment on a claim if they can "show[ ] that there is no genuine dispute as to any material fact and [they are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

4

moving party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))). A genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," while a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

To defeat a motion for summary judgment, Plaintiff "must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)). "[M]ere speculation or conjecture as to the true nature of the facts" will not suffice. *Hicks v. Baines*, 593 F.3d 159, 166 (2d Cir. 2010) (internal quotation marks and citations omitted). Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586.

In determining whether there exists a genuine dispute as to a material fact, the Court is "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (internal quotation marks and citation omitted). The Court's job is not to "weigh the evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 254 (2d Cir. 2002); *see also Hayes v. N.Y. City Dep't of Corr.*, 84 F.3d 614, 619 (2d Cir. 1996) ("In applying th[e] [summary judgment] standard, the court should not weigh evidence or assess the credibility of witnesses."). "Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." *Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005) (citation omitted). "[T]he judge must ask . . . not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Id.* at 553 (quoting *Anderson*, 477 U.S. at 252).

5

## III. DISCUSSION

### A. The Relevant Law

To prevail on a claim of trademark infringement for a registered trademark, pursuant to 15 U.S.C. § 1114(1), or an unregistered trademark, pursuant to 15 U.S.C. § 1125(a), a plaintiff must prove that (1) it has a valid mark entitled to protection under the Lanham Act and that (2) the defendant used the mark (3) in commerce (4) in connection with the sale or advertising of goods or services (5) without the plaintiff's consent. *1-800 Contacts, Inc. v. WhenU.com, Inc.*, 414 F.3d 400, 406-07 (2d Cir. 2005). The plaintiff must then show that the defendant's use of the mark "is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Savin Corp. v. Savin Grp.*, 391 F.3d 439, 456 (2d Cir. 2004); *see also* 15 U.S.C. §§ 1114, 1125; *1-800 Contacts*, 414 F.3d at 406-07.

The parties' submissions tee up issues related to the very first prong: Which party "owns" the Mark and is, therefore, entitled to enforce it as against the other party? Ownership of a federally registered trademark is prima facie evidence of the mark's validity and of the owner's exclusive right to its use. 15 U.S.C. §§ 1057(b), 1115(a). However, exclusive rights in a trademark are acquired not by registration, but through prior appropriation and use. *See Time, Inc. v. Petersen Publ'g Co.*, 173 F.3d 113, 118 (2d Cir. 1999) ("As a general matter, registration creates no substantive trademark rights against infringement beyond the common law rights acquired through use of the mark."); *see also La Societe Anonyme des Parfums Le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1270 n.5 (2d Cir. 1974) ("The Lanham Act does not create the trademark right; it only recognizes the right acquired through use."); *Jaffe v. Simon & Schuster Inc.*, 3 U.S.P.Q 2d 1047, 1049 (S.D.N.Y. 1987) ("[T]he fact that the plaintiff was the first to file an application to register the mark does not bolster his case. Ownership of a mark is not determined by the race to the [PTO], but by the race to the market.").

> The right to the exclusive use of a trademark derives from its appropriation and subsequent use in the marketplace. The user

> who first appropriates the mark obtains an enforceable right to exclude others from using it, as long as the initial appropriation and use are accompanied by an intention to continue exploiting the mark commercially.

*H.W. Carter & Sons, Inc. v. William Carter Co.*, 913 F. Supp. 796, 802 (S.D.N.Y. 1996) (Chin, J.) (quoting *La Societe Anonyme*, 495 F.2d at 127). Thus, in a trademark priority battle, rights acquired by a party through sufficient use of an unregistered mark in commerce trump the rights that another party later obtains by registering the mark.[4] *See, e.g.*, *Perfect Pearl Co. v. Majestic Pearl & Stone, Inc.*, 887 F. Supp. 2d 519, 529 (S.D.N.Y. 2012); *see also* 15 U.S.C. § 1057(c) ("Contingent on the registration of a mark on the principal register provided by this chapter, the filing of the application to register such mark shall constitute constructive use of the mark, conferring a right of priority, nationwide in effect, on or in connection with the goods or services specified in the registration against any other person *except for a person whose mark has not been abandoned and who, prior to such filing . . . has used the mark*." (emphasis added)). Because "[t]he exclusive right to a distinctive mark belongs to the one who first uses it in connection with a particular line of business," *Talk to Me Prods., Inc. v. Larami Corp.*, 804 F. Supp. 555, 559 (S.D.N.Y. 1992), *aff'd*, 992 F.2d 469 (2d Cir. 1993), "[i]t is . . . only the senior user of a mark that can bring a claim for trademark infringement or state or federal unfair competition," *Hawaii-Pacific Apparel Grp., Inc. v. Cleveland Browns Football Co.*, 418 F. Supp. 2d 501, 506 (S.D.N.Y. 2006) (Chin, J.) (citations omitted).

Not every use of a mark is sufficient to create an enforceable trademark right. The Lanham Act defines "use in commerce" as "the bona fide use of a mark in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127. "The talismanic test is whether or not the mark was used in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind as those of the adopter of the mark." *Gameologist Grp, LLC*

---

[4] In such a scenario, the prior user of the unregistered mark is entitled to common law protection for its continued use of the mark only in the geographical areas of use that predate the other party's registration. 15 U.S.C. § 1115(b)(5); *Patsy's Italian Rest., Inc. v. Banas*, 508 F. Supp. 2d 194, 217 (E.D.N.Y. 2007) (citing *Architemps, Inc. v. Architemps, Ltd.*, 704 F. Supp. 39, 40 (S.D.N.Y. 1988)).

*v. Scientific Games Int'l, Inc.*, 838 F. Supp. 2d 141, 154 (S.D.N.Y. 2011) (citation omitted); *Hawaii-Pacific*, 418 F. Supp. 2d at 506 (same). "When analyzing priority of use in order to determine ownership rights in a mark or name at common law, a user can rely on his or her predecessor-in-interest's first use to establish seniority (and superiority) of rights over a junior user." *Yah Kai World Wide Enters., Inc. v. Napper*, 195 F. Supp. 3d 287, 311 n.14 (D.D.C. 2016) (citing *SCM Corp. v. Langus Foods Ltd.*, 539 F.2d 196, 198 (D.C. Cir. 1976)); *JDR Indus. v. McDowell*, 121 F. Supp. 3d 872, 883 (D. Neb. 2015) (finding that priority of use was established "through an unbroken chain of use in commerce by [plaintiff] and its predecessors-in-interest"); *see also* 15 U.S.C. § 1055 ("If first use of a mark by a person is controlled by the registrant or applicant for registration of the mark with respect to the nature and quality of the goods or services, such use shall inure to the benefit of the registrant or applicant, as the case may be.").

In order to succeed on a prior use defense, "defendants must prove four elements: (1) present rights in the mark; (2) acquired prior to the date of registration; (3) continual use of the mark since that date; and (4) use prior to the registrant on the goods or services that are in issue." *Martha Graham Sch. and Dance Found., Inc. v. Martha Graham Ctr. of Contemporary Dance, Inc.*, 153 F. Supp. 2d 512, 525 (S.D.N.Y. 2001).

**B. Analysis**

As the above legal framework makes clear, the Court cannot grant summary judgment in favor of Saucony—either on its prior use defense or on its counterclaims—unless it first finds that there is no genuine dispute regarding the undeniably material threshold question of priority. Saucony has failed to show that there is no genuine dispute as to the date on which each party first used the Mark. At the very least, the evidence submitted by the parties requires assessments of weight and credibility, which are appropriately reserved to the jury. *See Jeffreys*, 426 F.3d at 553-54.

Both Plaintiffs and Saucony have changed their positions regarding their respective first uses of the Mark since the pleading stage of this case. As noted above, the only basis that Plaintiffs

alleged in their complaint for rights in the Mark was its registration, which is effective as of March 12, 2012. Compl. ¶ 5. For its part, Saucony alleged that it began using the Mark "no later than 2008." Countercls. ¶ 1. In briefing and opposing Saucony's motion for summary judgment, both companies have asserted earlier dates of first use.

### 1. The Evidence Submitted by Saucony

Saucony now asserts that it acquired rights in the Mark in 2004, when it released a Spring 2005 catalog introducing products bearing the VELOCITY Mark. Pls.' 56.1 ¶ 22. In support of that assertion, Saucony cites a declaration of its Senior Vice President for North American sales, Todd Dalhausser, who states: "Saucony has been marketing and using products bearing the VELOCITY product mark continuously in U.S. interstate commerce since it published its Spring 2005 catalog in 2004." Decl. of Todd P. Dalhausser in Supp. of Mot. for Summ. J. (ECF No. 59) ("Dalhausser Decl.") ¶ 14. In explaining his basis for asserting that the catalog was published in 2004, Dalhausser states that "[t]he copyright notice on Saucony's Spring 2005 catalog indicates a year of publication of 2004. This is not unusual as catalogs for a particular season are released at least six months prior to the start of that season." *Id.* ¶ 15. Annexed to Dalhausser's declaration are three pages from the aforementioned Spring 2005 catalog, which show shoes named "Velocity Spike Distance" and "Velocity Spike Sprint." Dalhausser Decl., Ex. A. Other than Dalhausser's fairly speculative explanation, Saucony presents no evidence that this catalog was published or circulated in 2004. Saucony also provides no evidence concerning the nature and extent of the distribution of the Spring 2005 catalog, either in 2004 or 2005.

When deposed as Saucony's 30(b)(6) witness, Dalhausser testified that, "[t]o the best of [his] knowledge," Saucony first "use[d]" the term "Velocity" for footwear products in 2005 and that he "believe[d]" that Saucony first used it in connection with apparel products and hats in 2008. Dalhausser Dep. 33:2-19. With respect to actual sales of products bearing the Mark, Saucony relies on Dalhausser's declaration that "[p]roducts marked VELOCITY have been sold throughout the

9

United States in interstate commerce every year since 2006 to the present." Dalhausser Decl. ¶ 37. Saucony also presents a declaration of an IT Team Lead from Saucony's parent corporation, stating that, based on an inventory search of Saucony's pre-2013 order management system, "it is clear that Saucony continuously sold apparel, including shoes, shirts and caps, bearing the VELOCITY mark every calendar year from 2006 to 2013." Decl. of Don Wright in Supp. of Mot. for Summ. J. (ECF No. 61) ("Wright Decl.") ¶ 11. Annexed to the Wright Declaration are screen shots of sample sales of VELOCITY-branded products from each year between 2006 and 2013. Wright Decl., Exs. A-H. The earliest sample sale shows an order date of December 26, 2006. *Id.*, Ex. A. Also annexed to the Wright Declaration is an "Inventory Sales Analysis Chart for VELOCITY marked products from 2006 to 2013" that was created from Saucony's pre-2013 order management system. Wright Decl. ¶ 21. The chart purports to show that customers placed orders for those products in each year between 2006 and 2013. *Id.* & Ex. I. It does not reflect the quantity of orders or the months or dates of orders.

In sum, the above evidence, if credited in its entirety and viewed in the light most favorable to Saucony, tends to show that Saucony has been selling products bearing the Mark (either standing alone or in combination with other words) since some time in 2006 and that it has been promoting, to an unspecified extent, products bearing the Mark in catalogs since at least Spring 2005, if not some point in 2004. But the Court observes that Plaintiff has raised significant questions regarding the credibility of some of the testimony supporting Saucony's contentions, particularly with respect to use of the Mark prior to 2005.

### 2. The Evidence Submitted by Plaintiffs

In opposing Saucony's motion, Plaintiffs provide a declaration of Behrooz Hedvat, in which he asserts that, "[f]or the past twenty-five years," he and his two brothers "have designed, manufactured and sold nylon spandex, poly spandex, and cotton spandex clothing" under several brand names. Hedvat Decl. ¶ 3. He further asserts:

10

> There have also been several different companies through which the Hedvat
> family operated their apparel business, but we presently operate through 4 Pillar,
> which is the holding entity for the Hedvat Family's intellectual property
> registrations/certificates (though the Hedvat Family used the 4 Pillar Dynasty
> name in connection with its manufacture and sale of various products long before
> it was actually formed and filed with the New York Secretary of States), and
> Reflex, through which the goods at issue in this case are designed, manufactured,
> and sold.

*Id.* ¶ 4. As is most relevant here, Hedvat also asserts that, "[f]rom January 2005 (if not earlier) to the present, the Hedvat Family has marketed and sold Yoga Clothes bearing the Velocity Mark throughout the United States (and abroad) through various entities beginning with our predecessor-in-interest, called Munchies of HK Ltd." Hedvat Decl. ¶ 7. At his November 29, 2016 deposition, Hedvat testified as follows:

> Q. Who created the name Velocity for purposes of your business?
> A. I did.
> Q. And when did you come up with that name?
> A. Ten, eleven years ago.
>
> ***
>
> Q. When was the Velocity trademark used on products?
> A. I believe Velocity was used ten years ago.

Dep. of Behrooz Hedvat ("Hedvat Dep.") 71:14-19, 62:2-5 (Nov. 29, 2016), annexed to Hedvat Decl. as Ex. H. With respect to why 4 Pillar filed a registration application on the basis of intent-to-use rather than on prior use of the Mark, Hedvat stated in his declaration:

> I believe this was done [by 4 Pillar's attorney] because the Application included,
> *inter alia*, garments in connection with which the Hedvat Family was not then
> using the Velocity Mark (i.e., bicycle clothing and socks), as well as clothing in
> connection with which the Hedvat Family had been using the Velocity Mark. (i.e.,
> Yoga Clothes).

*Id.* ¶ 11 n.3.

Saucony attacks Hedvat's assertion of use dating back to 2005 on the ground that it is too vague and is self-serving. Reply Mem. of Law in Supp. Mot. for Summ. J. (ECF No. 71) (Def.'s Reply Mem.), at 6. It is true that a non-movant may not "escape summary judgment merely by

vaguely asserting the existence of some unspecified disputed material facts," *W. World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990), and must instead "produce specific facts indicating that [a genuine factual] issue exists," *Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998).  Hedvat's assertion that he and his brothers have marketed and sold Yoga Clothes bearing the Mark through various companies since at least January 2005 is not a vague assertion of an "unspecified" factual dispute; rather, it is a specific assertion that is sufficient to establish the existence of a factual dispute.  Moreover, a declaration is not rendered insufficient merely because it is self-serving; indeed, it is decidedly not the Court's role to discredit a declaration on that basis.  *See Danzer v. Norden Sys., Inc.*, 151 F.3d 50, 57 (2d Cir. 1998) ("To hold, as defendants ask us to do, that the nonmovant's allegations of fact are (because 'self-serving') insufficient to fend off summary judgment would be to thrust the courts—at an inappropriate stage—into an adjudication of the merits."); *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 38 (2d Cir. 1994) ("It is not the province of the summary judgment court itself to decide what inferences should be drawn.").  "Even a self-serving affidavit can establish a genuine dispute of fact so long as the affidavit does not contradict the witness's prior testimony." *Dye v. Kopiec*, No. 16-cv-2952 (LGS), 2016 WL 7351810, at *3 (S.D.N.Y. Dec. 16, 2016); *see also Hayes*, 84 F.3d at 619 ("[A] party may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony.").

Saucony also contends that Hedvat's statement about the reason for filing 4 Pillar's registration application on an intent-to-use basis should be disregarded.  Specifically, Saucony argues that the statement is "conclusory, self-serving and inconsistent with:  (1) his own deposition testimony, where he recalls providing no guidance to the attorney preparing the application to the PTO; and (2) the testimony of 4 Pillar's Managing Member who signed the application, but could provide no understanding for its intent-to-use basis."  Def.'s Reply Mem. at 6 (footnote omitted).  The Court need not assess Saucony's argument, because Hedvat's statement concerning the reason

12

for filing on an intent-to-use basis is not necessary to resolve this motion.

Saucony appears to suggest that the choice to file an intent-to-use application constitutes evidence of non-use prior to the application date. *See* Mem. of Law in Supp. Mot. for Summ. J. (ECF No. 57) ("Def.'s Mem."), at 10 ("As of March 12, 2012 . . . 4 Pillar conceded in its intent-to-use application to the PTO that *it was not using* 'VELOCITY' in commerce." (emphasis in original)). But Saucony cites no authority for that proposition, much less for the proposition that it constitutes an irrebuttable concession.[5] When 4 Pillar submitted its Statement of Use in December 2013, it alleged under penalty of perjury that the Mark "was first used by the applicant, or the applicant's related company, licensee, or predecessor in interest *at least as early as 01/13/2010*, and first used in commerce *at least as early as 01/13/2010*." Maluf Decl., Ex. Q (emphasis added). Plainly read, the Statement of Use is not inconsistent with Hedvat's assertion concerning use beginning in 2005. That the PTO then issued a registration certificate showing those dates of first use suggests that the decision to file an application on an intent-to-use basis does not prevent a registrant from later claiming an earlier date of first use. At best, Saucony's arguments go to the weight and/or credibility to be afforded Plaintiffs' evidence that it first used the Mark in 2005, but such considerations are for the jury, not the judge. *See Jeffreys*, 426 F.3d at 553-54.

### 3. The Genuine Dispute of Material Fact

As the above discussion shows, the evidence submitted by the parties presents a relatively close factual conflict. Saucony has presented cognizable evidence that it commenced sales of products bearing the Mark in 2006, and Plaintiffs have provided cognizable evidence that the Hedvats began selling products bearing the Mark in early 2005. The conflict grows even tighter when considering Saucony's assertions that it began promoting products bearing the Mark in its

---

[5] The Court observes that, while 4 Pillar declared in its application that it "has a bona fide intent to use or use through the applicant's related company or licensee the mark in commerce," nothing in the application states that 4 Pillar had never used the Mark before. *See* Maluf Decl., Ex. L.

13

Spring 2005 catalog, which Dalhausser speculates was published in 2004. Even assuming that the catalog was published in 2004, however, the question of whether use of the Mark in that catalog sufficed to create priority is a factual question that is not indisputably resolved by Saucony's submissions.

> It is well-established that while technical trademark or service mark use is a requisite for federal registration, prior use of a designation in interstate or intrastate commerce in a manner analogous to trademark and service mark use can defeat a trademark registered by a subsequent user. Such analogous uses include use in advertising, use as the salient feature of a trade name, or any other manner of . . . open and public use of such nature and extent as to create, in the mind of the relevant purchasing public, an association of the designation with the goods and services of the party claiming priority rights in the designation.

*Diarama Trading Co. v. J. Walter Thompson U.S.A., Inc.*, No. 01-cv-2950 (DAB), 2005 WL 2148925, at *7 (S.D.N.Y. Sept. 6, 2005) (internal quotation marks and citations omitted); *see also Int'l Healthcare Exch., Inc. v. Glob. Healthcare Exch., LLC*, 470 F. Supp. 2d 365, 371 (S.D.N.Y. 2007) ("[P]resale analogous use of a mark, such as publicity in advertising brochures, catalogs, newspaper ads, and articles in newspapers and trade publications . . . may be adequate to establish prior use in commerce. [S]uch analogous use of a mark has consistently been held sufficient . . . to establish priority rights as against subsequent users of the same or similar marks, as long as the use is open and notorious or is of such a nature and extent that the [mark] has become popularized in the public mind." (second and third alterations in original) (internal quotations marks and citations omitted)); *T.A.B. Sys. v. PacTel Teletrac*, 77 F.3d 1372, 1375 (Fed. Cir. 1996) (stating that evidence of pre-sale analogous use must "support [ ] the critical inference of identification in the mind of the consuming public"); *Cent. Garden & Pet Co. v. Doskocil Mfg. Co.*, 2013 WL 4635990, at *8 (T.T.A.B. 2013) ("[T]he touchstone of analogous use is a factual determination of whether the use of the mark has created in the minds of the relevant public an association between the goods or services and their source.").

Here, even assuming that the catalog was printed in 2004, Saucony provides no evidence concerning the use of that catalog, including the scope, if any, of its circulation to retailers and/or

14

customers. Accordingly, Saucony has not made a sufficient showing at this stage that its pre-sales use of the Mark in the Spring 2005 catalog was either "open and notorious" or "of such a nature and extent that the [mark] has become popularized in the public mind." *See Int'l Healthcare Exch.*, 470 F. Supp. 2d at 371.

* * *

As noted earlier, the function of the Court in evaluating a summary judgment motion is not to resolve factual disputes, render credibility determinations, or weigh the evidence. *See Lucente*, 310 F.3d at 254; *Hayes*, 84 F.3d at 619. Instead, to determine whether a genuine dispute of a material fact exists that precludes a grant of summary judgment, the Court must ask "whether, drawing all reasonable inferences from the evidence presented in favor of the non-moving party, a fair-minded jury could find in the non-moving party's favor." *Urbont v. Sony Music Entm't*, 831 F.3d 80, 88 (2d Cir. 2016) (citation omitted). In light of the evidence submitted by Plaintiffs, the Court concludes that a fair-minded jury could find in Plaintiff's favor on the threshold issue of first use of the Mark. Or, put another way, Saucony has not carried its burden as movant to show that no fair-minded jury could so find. Thus, while Saucony will have an opportunity to persuade a jury that its evidence of first use wins the day, it has not made a sufficient showing to warrant summary judgment.

The Court expresses no view with respect to any other factual issues pertinent to this case, including whether each party's use of the Mark has been sufficiently continuous. The parties may address that factual issue, and any others, at trial.

IV. **CONCLUSION**

For the foregoing reasons, Defendant Saucony, Inc.'s motion for summary judgment is DENIED. The Clerk of Court is directed to terminate the motion pending at Dkt. No. 56.

SO ORDERED.

Dated: May 8, 2017  
New York, New York

GREGORY H. WOODS  
United States District Judge

15